THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **LESTER JAY CHAMBERS,**<br><br>　　　　　　**Plaintiff,**<br><br>　　v.<br><br>**ROWAN UNIVERSITY,**<br><br>　　　　　　**Defendant.** | Civil No. 23-2094 (RMB/SAK) |

REPORT AND RECOMMENDATION
RE: DEFENDANT'S MOTION TO ENFORCE SETTLEMENT

　　This matter is before the Court on Defendant Rowan University's Motion to Enforce Settlement [ECF No. 58]. The Court received *pro se* Plaintiff Lester Jay Chambers' Opposition [ECF No. 60] and Defendant's Reply [ECF No. 61]. The Court heard oral argument on August 26, 2024. For the reasons to be discussed, it is respectfully recommended that Defendant's Motion to Enforce Settlement be **GRANTED**. This Report and Recommendation is issued pursuant to 28 U.S.C. § 636(b)(1). The Court makes the following findings in support of this Recommendation.

**I.　BACKGROUND**

　　Plaintiff filed this action against Rowan University alleging racial harassment, racial discrimination, and retaliation under Title VII of the Civil Rights Act of 1964. *See* Compl. [ECF No. 1]. On April 29, 2024, the parties participated in an in-person settlement conference. Plaintiff was represented, for settlement purposes only, by Professor David White, Esquire and two student advocates—Peter Kizima and David Cassidy—as part of the Seton Hall University School of Law Settlement Conference Advocacy Program ("SHU Settlement Advocacy

Program"). A settlement was reached, with the essential terms placed on the record. *See* Tr. [ECF No. 57]. A non-monetary term required Defendant to provide Plaintiff with electronic locksmith training. *Id.* at 6:21-23. Both the Court and Student Advocate Kizima engaged in a *voir dire* of Plaintiff. *Id.* at 6:4-10:25. During the *voir dire* by Mr. Kizima, Plaintiff stated that that he agreed with the terms of the settlement and that he made the decision "intelligently, knowingly, freely and voluntarily." *Id.* at 6:4-6. When questioned by the Court, Plaintiff similarly testified that he agreed with the terms, that he was entering the agreement "freely, knowingly and voluntarily," and that he believed the agreement to be fair and reasonable. *Id.* at 8:22-9:2. When asked whether he had "any reservations at all," Plaintiff responded, "not really." *Id.* at 9:3-5. The Court asked Plaintiff to elaborate on his response, at which time Plaintiff stated he wanted to ensure that he received quality electronic locksmith training, and not merely basic training. *Id.* at 9:10-23. In response, Yvette Cave, counsel for Rowan University, indicated that Defendant would work with Plaintiff to provide the training that he sought so long as it was reasonable and available. *Id.* at 10:6-15. In light of Ms. Cave's representation, Plaintiff testified that he had no reservations about the agreement. *Id.* at 10:16-22. The Court was "satisfied that Mr. Chambers [understood] the terms of the agreement, and that [he] entered into the agreement freely, knowingly, and voluntarily." *Id.* at 10:23-11:1.

Following the settlement conference, on April 30, 2024, Plaintiff wrote the Court seeking to "halt any further monetary transactions from the defendant and consider dismissing the charges without prejudice." *See* Pl. Letter. [ECF No. 53]. In his letter, Plaintiff explained that "[his] intent [was] not rooted in dissatisfaction with settlement offers but rather in an unwavering pursuit of justice and transparency." *Id.* at 1. He stated, "[p]ost hearing introspection and a

Case 1:23-cv-02094-RMB-SAK   Document 63   Filed 11/26/24   Page 3 of 10 PageID: 428

connection to [his] ancestral values have strengthened [his] resolve to pursue justice over financial compensation." *Id*.

Defendant filed the present motion to enforce settlement. *See* Def. Mot. [ECF No. 58]. Defendant notes that during the Court's *voir dire* of Plaintiff, Plaintiff affirmed: (1) his understanding of and assent to the terms of the agreement; (2) his understanding of his right to a trial by jury and the uncertainty in the outcome at trial; (3) his awareness that the agreement is a full and final settlement of all claims with Rowan as of the agreement date; (4) his satisfaction with the legal services provided by the Seton Hall Program; (5) that he entered into the agreement freely, knowingly and voluntarily; and (6) that he believed the agreement to be fair and reasonable. Def.'s Br. at 3 [ECF No. 58-1] (citing Tr. at 7:20-9:2 [ECF No. 57]). Defendant asserts that "Plaintiff has not raised any issue with the terms of the agreement or even made any argument that no settlement agreement was reached." *Id.* at 6. Defendant further asserts that "Plaintiff's only reason for not wanting to proceed with the settlement agreement is because he wishes to pursue justice over financial compensation." *Id.* at 6. Defendant argues that "Plaintiff's lack of dispute as to whether a settlement agreement has been reached is reason enough to enforce the settlement agreement." *Id*.

In response, Plaintiff "urge[s] the court not to enforce the settlement agreement . . . and to acknowledge that [he] agreed to the settlement under duress." Pl. Opp. at 2 [ECF No. 60]. As to the source of the purported duress, Plaintiff cites to events occurring in his life over the past year or so, including: (1) demands by Gloucester County health inspector that Plaintiff replace his septic system; (2) Plaintiff's tendon surgery and throat biopsy in 2024; and (3) a lawsuit filed against him by an unidentified plaintiff. *See id*. at 1.

3

In addition to the purported duress, Plaintiff expresses dissatisfaction with the SHU Settlement Advocacy Program. He states that he "was unsure if they would be able to represent [him] effectively" and that he previously conveyed his "unwilling[ness] to settle for less than $185,000." *Id*. at 2. Plaintiff contends that in response to "low ball settlement offers" presented at the settlement conference, he advised his counsel that he was "not a crackhead" and emphasized his desire to advocate for "the broader community." *Id*. Plaintiff appears to allege that his counsel advised him about the lack of guarantee at trial and that "having something is better than having nothing." *Id*. Plaintiff also suggests that a motion to amend his complaint pending at the time of the settlement, should have been granted because "[f]ederal law says that the general 5-year statute of limitations applies in every case . . . .." *Id.*

## II. DISCUSSION

"State law governs the construction and enforcement of settlement agreements in federal court." *Excelsior Ins. Co. v. Pennsbury Pain Ctr.,* 975 F.Supp. 342, 348 (D.N.J. 1996). As a binding legal contract and for public policy reasons, New Jersey courts honor settlement agreements "absent a demonstration of fraud or other compelling circumstances." *Nolan by Nolan v. Lee Ho,* 577 A.2d 143, 146 (N.J. 1990). New Jersey courts "require 'clear and convincing proof' that the agreement should be vacated" prior to entering an order rescinding a settlement agreement. *Id.*; *see also Shine v. TD Bank Fin. Grp.*, No. 09-4377, 2011 WL 3328490, at *4 (D.N.J. Aug. 2, 2011). Courts consider motions to enforce settlement "under the same standard as a motion for summary judgment because the central issue is whether there is any disputed issue of material fact as to the validity of the settlement agreement." *Gonzalez v. Pace Motor Lines, Inc.*, No. 19-21202, 2022 WL 2439859 (D.N.J. Feb. 22, 2022), *report and recommendation adopted.*, 2022 WL 2439860 (D.N.J. Mar. 9, 2022).

4

"Under New Jersey law, a settlement agreement between parties to a lawsuit is a separate and independent contract from the underlying dispute." *Fogarty v. Household Fin. Corp. III*, No. 14-4525, 2018 WL 4039506, at *3 (D.N.J. June 28, 2018), *report and recommendation adopted sub nom.* 2018 WL 4031064 (D.N.J. Aug. 22, 2018). "The burden is on the moving party to establish that the parties entered into a contract of settlement." *LNT Merch. Co. v. Dyson, Inc.,* No. 08-2883, 2009 WL 2169236, at *2 (D.N.J. July 21, 2009) (citing *Amatuzzo v. Kozmiuk,* 703 A.2d 9, 12 (N.J. Super. Ct. App. Div. 1997)). Although New Jersey favors settlements, a settlement "should not be enforced 'where there appears to have been an absence of mutuality of accord between the parties or their attorneys in some substantial particulars, or the stipulated agreement is incomplete in some of its material and essential terms.'" *McDonnell v. Engine Distributors*, No. 03-1999, 2007 WL 2814628, at *3 (D.N.J. Sept. 24, 2007) (quoting *Bistricer v. Bistricer,* 555 A.2d 45, 47 (N.J. Super. Ct. Ch. Div. 1987)).

To form a binding settlement agreement, as with any contract, there must be a "meeting of the minds" for each material term to the agreement. *Pacific Alliance Grp. Ltd. v. Pure Energy Corp.*, No. 02-4216, 2006 WL 166470, at *3 (D.N.J. Jan. 23, 2006). A "meeting of the minds" requires "a common understanding and mutual assent of all the [material] terms of a contract." *Knight v. New England Mut. Life Ins. Co.*, 533 A.2d 55, 58 (N.J. Super. Ct. App. Div. 1987). The mutual understanding and assent to the material terms can occur orally. *U.S. v. Lightman*, 988 F.Supp. 338, 459 (D.N.J. 1997) ("New Jersey law specifies that parties may orally . . . agree upon all essential terms of a contract and effectively bind themselves thereon, if that is their intention, even though they contemplate the later execution of a formal document to memorialize their undertaking."). This is true even if a party later reneges before the formal execution of the document memorializing the agreement. *See Lahue v. Pio Costa,* 623 A.2d

775, 788 (N.J. Super. Ct. App. Div. 1993) ("Where the parties agree upon the essential terms of a settlement . . . the settlement will be enforced notwithstanding the fact that a writing does not materialize because a party later reneges.").

Here, Defendant has met its burden of establishing that the parties entered into a settlement agreement. Defendant demonstrated that there was a meeting of the minds as to the essential terms of the agreement. The following exchange occurred during Plaintiff's *voir dire*:

> The Court: Mr. Chambers, you heard the terms of the agreement that was recited by student advocate, Mr. Kizima. Do you understand those terms?
>
> Plaintiff: Yes, yes, your Honor.
>
> The Court: And are you in agreement with the terms?
>
> Plaintiff: Yes, Your Honor.
>
> The Court: And are you aware that this is a full and final settlement of all claims you have as of this date with Rowan University?
>
> Plaintiff: Yes.
>
> The Court: Are you satisfied with the legal services provided to you by Seton Hall School of Law Settlement Conference Advocacy Program?
>
> Plaintiff: Yes.
>
> The Court: Are you entering into this agreement freely, knowingly and voluntarily?
>
> Plaintiff: Yes, Your Honor.
>
> The Court: Do you believe the terms of the agreement to be fair and reasonable?
>
> Plaintiff: Yes.
>
> The Court: Do you have any reservations at all about this agreement?
>
> Plaintiff: No, Your Honor, not really. I'm just ready to move forward, I guess.
>
> The Court: Okay, when you say, not really, do you want to elaborate on that? Do you have concerns about the agreement?

| | |
|---|---|
| Plaintiff: | No. I'm just making sure I can get quality electric locks with class, you know. I don't want it to just be a basic -- you know what I mean? I want it to be an intense locksmith class, with training. |
| The Court: | What do you mean by intense? |
| Plaintiff: | Dealing with electronic locks, it can't just be something that you – I already had a small class. They already gave me a small training class with no electronic locks. We had that at one point in time. I want an intense training class that shows, you know, how to – how to read the scanners and everything else, like the other -- you know what I mean, just do the total operation of electronic locks that we are going to be installing, and it's going to be prevalent on campus, that's all. |
| The Court: | Okay. So, as the Court understands, Ms. Cave, as well as General Counsel, would be looking into what available courses are suitable for what you described. I can have Ms. Cave chime in – |
| Ms. Cave: | Yes. |
| The Court: | -- if there is something you would like to clarify? |
| Ms. Cave: | Yes, if I may, Your Honor? We did get in touch with somebody at Rowan, and what we can do is, if Mr. Chambers has any specific courses in mind, any specific trainings, have -- put a list together, and we can, of course, review those and make sure one of those would even be available. So, I think it's pretty open, as long as it's reasonable of course, you know, not like $25,000, a trip to Hawaii for a training-type deal. But, yes, but certain -- but, certainly -- but, certainly, there is some leeway with what can be provided, so – |
| The Court: | Is the representation of counsel acceptable to you? |
| Plaintiff: | Yes. |
| The Court: | Okay. So, with that being said, are you satisfied? Do you have any reservations about the agreement? |
| Plaintiff: | No, Your Honor. |

Tr. at 7:20-8:1; 8:14-10:22 [ECF No. 57]. As illustrated in the *voir dire* and noted by Defendant, Plaintiff does not dispute that the parties agreed to the material terms of the settlement. *See* Pl. Letter. at 1 [ECF No. 53]. Except for the settlement term relating to locksmith training, Plaintiff

7

did not equivocate about his understanding of the terms or his agreement to these terms. As to the locksmith training term, Plaintiff initially expressed some hesitancy, and then articulated his concern about the quality of the training program. Once Ms. Cave assured Plaintiff of Defendant's willingness to work with him for a quality program, within reason, Plaintiff testified that he had no reservation about the agreement.

Additionally, as a stated reason for seeking to rescind the agreement, Plaintiff asserts that "[his] intent is not rooted in dissatisfaction with settlement offers." *See* Pl. Letter at 1 [ECF No. 53]. He attributes his apparent change of heart to "[p]ost-hearing, introspection[.]" *Id.* While Plaintiff may now have second thoughts or regret the settlement, this regret is not a basis for rescinding the settlement agreement. *Jennings v. Reed*, 885 A.2d 482, 488 (N.J. Super. Ct. App. Div. 2005) ("[P]laintiffs' second thoughts which, quite simply, are entitled to absolutely no weight as against our strong public policy in favor of settlement.") (internal quotations omitted); *MedPointe Healthcare, Inc. v. Kozachuk*, No. 04-2019, 2009 WL 540680 at *5 (D.N.J. Mar. 4, 2009) ("[Defendant's] regret, however, is not a reason for this Court to refuse to enforce the settlement reached in this matter."). The Court finds that the parties—with a full understanding of the essential terms and intention to be bound by the terms—entered into a valid agreement to settle the case.

Plaintiff also alleges that the settlement was reached under duress. A party may rescind a settlement agreement if the party demonstrates the agreement was entered into under duress. *See Shine*, 2011 WL 3328490, at *4. However, a plaintiff's burden of proof to show duress is a heavy one. *Fogarty*, 2018 WL 4039506 at *7. The plaintiff must provide "clear and convincing proof" the settlement agreement should be vacated. *Nolan*, 577 A.2d at 146. To void a contract based on duress under New Jersey law, a party must demonstrate he or she was "deprived of the

8

exercise of free will because of wrongful pressure or threats." *Mac Naughton v. Harmelech*, No. 09-5450, 2016 WL 3771276 at *7 (D.N.J. July 13, 2016), *aff'd,* 693 Fed. Appx. 154 (3d Cir. 2017) (unpublished). The circumstances must reflect a pressure "so oppressive . . . as to constrain one to do what his free will would refuse." *Rubenstein v. Rubenstein*, 120 A.2d 11, 15 (N.J. 1956). Additionally, the wrongful acts or pressure must be attributable to the party claiming the benefit of the contract or someone acting on their behalf. *Mullin v. Leamy*, 79 A. 257, 257 (N.J. 1911); *see also Jennings*, 885 A.2d at 488.

Here, Plaintiff has not satisfied his heavy burden of showing he entered the agreement under duress. While Plaintiff's medical procedures and household septic tank concerns may have been stress-inducing, they are not attributable to Defendant. *See Mullin*, 79 A. at 257 (finding for "duress to be available as a defense," the wrongful acts or pressure must be attributable to the party claiming the benefit of the contract or someone acting on their behalf). Plaintiff also does not allege that he was deprived of the exercise of free will because of wrongful pressure or threat. To the contrary, he testified that he entered into the agreement freely and voluntarily. During Plaintiff's testimony, the Court had the opportunity to observe his demeanor. Sensing at one point that Plaintiff may have had some reservation, the Court explored this perceived reservation. After an exchange between defense counsel and Plaintiff about the locksmith training program, and after Plaintiff testified that he had no reservation about the agreement, the Court expressed its satisfaction that Plaintiff understood the terms of the agreement, and that he entered into the agreement freely, knowingly and voluntarily. Plaintiff simply failed to meet his burden of showing that he entered the agreement under duress.[1]

---

[1] In his opposition, Plaintiff expressed doubts as to his counsel's ability to effectively represent him. Pl. Opp. at 2 [ECF No. 60]. However, he earlier testified that he was satisfied with the representation of counsel. Similarly, suggestions that his pending motion to amend the complaint should have been granted do not bear on his demonstrated free will in entering the agreement.

### III. **CONCLUSION**

Accordingly, for all the foregoing reasons, it is this **26th** day of **November**, **2024**, respectfully recommended that Defendant's Motion to Enforce Settlement be granted. Pursuant to FED. R. CIV. P. 72 and L. CIV. R. 72.1(c)(2), the parties shall have fourteen (14) days from the date of this Order in which to file any objections with the Court.

s/ Sharon A. King
SHARON A. KING
United States Magistrate Judge

cc:  Hon. Renée Marie Bumb, Chief Judge